JP:KKO

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# M 12- 080

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

C O M P L A I N T

    - against -

(21 U.S.C. § 846)

YUN YONG LU,
    also known as "Michael" and
MEI JUAN XU,
    also known as "Mei Juan Shu"
    and "Annie,"

        Defendants.

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

      JEFFREY SENN, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

      Upon information and belief, on or about and between November 29, 2011 and January 24, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants YUN YONG LU, also known as "Michael" and MEI JUAN XU, also known as "Mei Juan Shu" and "Annie," together with others, did knowingly and intentionally conspire to possess with intent to distribute a controlled substance, which offense involved one hundred grams or more of a

substance containing heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(i); Title 18, United States Code, Sections 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.   I have been a Special Agent with the DEA for approximately nine years.  My information in this case comes from a review of DEA records, conversations with other agents, and my direct participation in the investigation.

2.   On or about November 29, 2011, an undercover DEA agent (the "UC") met in Flushing, New York with "Michael," an individual believed to be involved in narcotics trafficking, for the stated purpose of acquiring a sample of heroin from him.  The UC later learned that "Michael's" true name is YUN YONG LU.  During this meeting, which was recorded, LU provided the UC with a plastic bag containing a white powdery substance that was consistent in appearance with heroin.  LU then stated, in sum and substance, that the bag contained high quality heroin.[2]  LU

---

[1]   Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

[2]   All discussions described in this Complaint took place in Mandarin Chinese, in which the UC is fluent.

further stated, in sum and substance, that the price of the heroin is $100.00 per gram. Following the meeting, the contents of the plastic bag field-tested positive for heroin. The gross weight of the heroin obtained from LU on November 29, 2011 is 30 grams.

3.   On or about December 9, 2011, the UC met with "Annie", who was subsequently identified as MEI JUAN XU and "Mei Juan Shu," in Flushing, New York for the stated purpose of acquiring a second sample of heroin. During this meeting, XU provided the UC with a bag containing two samples of a white powdery substance, each of which was consistent in appearance with heroin. XU then stated, in sum and substance, that the price of this heroin is $85.00 per gram. Following the meeting, the contents of the plastic bag field-tested positive for heroin. The gross weight of the heroin obtained from XU on December 9, 2011 is 90 grams.

4.   On or about December 14, 2011, the UC met with XU in Flushing, New York for the stated purpose of acquiring a sample of methamphetamine. During this meeting, XU provided the UC with a bag containing white crystals that were consistent in appearance with methamphetamine. XU referred to the contents of the bag as "ice" and stated, in sum and substance, that "ice" could be smoked by applying heat to glass pipes. XU further stated, in sum and substance, that the amount of "ice" she

provided plus a little more "ice" would cost over $100.00. Following the meeting, the substance XU called "ice" field-tested positive for amphetamines. The gross weight of the amphetamines obtained from XU on December 14, 2011 is 43.8 grams.[1]

     5. On or about January 10, 2012, the UC made a recorded telephone call to XU to confirm a meeting to take place the following day at 1:30 p.m. in Flushing, New York. During this call, the UC advised XU that the UC would buy $1,000.00 worth of "the frozen stuff" and $1,000.00 worth of "flour." During this conversation, the UC used "the frozen stuff" as a code for the substance containing amphetamines which XU called "ice" and the UC used "flour" as a code for heroin. XU responded, in sum and substance, that she was waiting to hear from her source of supply.

     6. On or about January 11, 2012, the UC met with LU and XU in Flushing, New York for the stated purpose of purchasing heroin and methamphetamine. During this meeting, which was recorded, LU provided the UC with a brown paper bag. XU then stated, in sum and substance, that the bag contained only $200.00 worth of "ice" instead of $1,000.00. The UC inspected the contents of the bag and observed two clear plastic bundles, one

---

[1] In light of the absence of laboratory testing at this time, the government is not presently charging the defendants with conspiracy to distribute and possess with intent to distribute methamphetamine.

significantly larger than the other, both containing white powdery substances. The UC then gave LU a brown paper bag containing $1,200.00 in payment for the two bundles. LU stated, in sum and substance, that the larger bundle contained "number four". Based on my training, experience and knowledge of this investigation, I am aware that "number four" is used as a codeword for Southeast Asian heroin. XU stated, in sum and substance, that the smaller bundle contained "frozen" and should be smoked from a pipe. The UC asked LU, in sum and substance, for the price of 700 grams of heroin. LU responded, in sum and substance, that the price would be $105,000.00 because it was a high-grade product. The UC then proposed to meet the following week, on January 18, 2012, so that the UC could purchase 700 grams of "number four" for $105,000.00. LU agreed and stated that the money and the "stuff" should be kept separate. Based on my training, experience and knowledge of this investigation, I believe that LU used the term "stuff" to indicate controlled substances. Following the meeting, the substance in the larger bundle field-tested positive for heroin and the substance in the smaller bundle field-tested positive for amphetamines. The gross weight of the heroin obtained from LU and XU on January 11, 2012

is 56 grams and the gross weight of the amphetamines obtained from LU and XU on January 11, 2012 is 54 grams.[1]

7.    On or about January 18, 2012, the UC met with LU and XU in Flushing, New York for the stated purpose of purchasing heroin.  While we waited for the heroin to arrive, a male arrived and advised the UC, in sum and substance, that only 350 grams of heroin would be supplied, instead of 700 grams, and that the UC would have to continue waiting.  The UC then rescheduled the transaction with LU and XU to the following Tuesday, January 24, 2012.

8.    On or about January 24, 2012, the UC met with LU and XU in Flushing, New York for the stated purpose of purchasing heroin.  After the initial meeting, which took place in a hotel restaurant, the UC left the hotel and walked across the street to a parking lot.  LU then drove a 2011 Nissan Rogue registered to XU into the parking lot and drove to the UC's location.  The UC then entered the vehicle.  Inside the vehicle the LU showed the UC a substance that appeared to be consistent with heroin.  The UC weighed the substance on a portable electronic scale and scale indicated a gross weight of more than 700 grams.  After viewing the heroin, the UC made a telephone call to another DEA agent and

---

[1]    In light of the absence of laboratory testing at this time, the government is not presently charging the defendants with conspiracy to distribute and possess with intent to distribute methamphetamine.

gave a prearranged signal to indicate that the heroin was present. Agents then arrested XU and LU and the substance in the vehicle was seized. The substance in the vehicle field-tested positive for heroin. The gross weight of the heroin seized on January 24, 2012 was 752 grams.

9. The total gross weight of the heroin obtained and seized from defendants LU and XU is 928 grams.

10. The total gross weight of the amphetamines obtained from defendants LU and XU is 97.8 grams.

WHEREFORE, your deponent respectfully requests that the defendants YUN YONG LU, also known as "Michael" and MEI JUAN XU, also known as "Mei Juan Shu" and "Annie," be dealt with according to law.

JEFFREY SENN
Special Agent,
Drug Enforcement Administration

Sworn to before me this
25th Day of January, 2012

HONORABLE          S/ Pohorelsky          Y
UNITED ST                                 E
EASTERN D

7